1   Jarod Bona (23327)
2   jarod.bona@bonalawpc.com
    Bona Law PC
3   4275 Executive Square, Suite 200
4   La Jolla, CA 92037
    858.964.4589
5   858.964.2301 (fax)
6
    *Attorney for Plaintiff*
7

8                UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11   AmeriCare MedServices, Inc.,        Case No.:

12                    *Plaintiff,*        **Complaint**

13          vs.

14   City of Huntington Beach,           JURY TRIAL DEMANDED

15                    *Defendant.*

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff AmeriCare MedServices, Inc. ("AmeriCare") alleges as follows upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

The State of California created a scheme by which it and its political subdivisions ensure that California citizens receive the prehospital emergency medical services and transport ("EMS") to which they are entitled. Under that scheme, the state gave its local EMS authorities—subject to supervision and approval by the California Emergency Medical Services Authority ("EMSA")—authority to determine which areas within its jurisdiction should be "exclusive operating areas" subject to a competitive bidding process or grandfathering, and which areas should be non-exclusive operating areas in which multiple qualified providers operate to provide the swiftest emergency response. With the exception of grandfathered areas where the same service provider has been providing service without interruption since January 1, 1981, competition is the state policy.

Defendant City of Huntington Beach eschewed the State of California's competition policy—and the determinations made by its state and local EMS authorities—and instead monopolized the market. Although it entered into an agreement with Orange County in 1986 regarding the provision of prehospital EMS under a competitive bidding process for prehospital EMS in the area comprising Huntington Beach (designated by the California Emergency Medical Services Authority ("OCEMS") as "AO9"), that

COMPLAINT

arrangement did not last. The city displaced a competitive private ambulance service with its own fire department, repudiating the competitive bidding process once and for all, in direct violation of state law. In doing so, it created an illegal monopoly in violation of Sherman Act Section 2.

Due to the absence of a competitive bidding process or any grandfathering, OCEMS redesignated AO9 as a non-exclusive area in which any county-qualified EMS provider is entitled to be placed in rotation upon request. Those private EMS providers' rates are set by the county, whereas city EMS providers' rates are not.

The city—recalcitrant to ceding control over a lucrative revenue-generating service the State of California has determined should instead be provided in a competitive market—refuses to place Plaintiff AmeriCare into the rotation for AO9. The city falsely claims that it maintains its "rights" under California Health & Safety Code Section 1797.201. But the city repudiated its rights to retain administration of prehospital EMS when it and the county "enter[ed] into a written agreement . . . regarding the provision of prehospital emergency medical services for that city or fire district." Cal. Health & Safety Code § 1797.201. Moreover, regardless of whether the city retained .201 rights, it may only operate as an exclusive operating area if either (a) "a competitive process is utilized to select the provider or providers" or (b) it "develops or implements a local plan that continues the use of existing providers operating within [the] area in the manner and scope in which the services have been provided without interruption since January 1, 1981." Cal. Health & Safety Code § 1797.224. As the

BONA LAW PC
BUSINESSJUSTICE.COM

COMPLAINT

designating authority, OCEMS determined that Huntington Beach does not meet either exception for exclusivity.

The city has not utilized a competitive process and has not carried on with an existing service provider without interruption since before January 1, 1981. In fact, the city did not enter into the ambulance business until 1993.

The City of Huntington Beach established an illegal monopoly with 100% market power and an ability to raise prices above market levels—indeed, to any price it so deems—in A09, while providing minimal quality and speed of service without regard to market demand. In direct contravention of State of California policy, the city displaced all competition in the market for prehospital EMS in the area comprising Huntington Beach. As a result, consumers of prehospital EMS in the relevant market pay supracompetitive prices and suffer slower response times and lesser quality emergency services than those provided in a competitive market.

This is an action for damages, declaratory, and injunctive relief for monopolization under Section 2 of the Sherman Act and certain state law claims.

## JURISDICTION AND VENUE

1.      This Court has primary subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1337(a), and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26 because this action arises under the antitrust laws of the United States.

2.      This Court has supplemental jurisdiction over the state law claims of this complaint under 28 U.S.C. § 1367 because they arise

COMPLAINT

from the same nucleus of operative facts as the antitrust claim such that they form part of the same case or controversy.

3.     Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) and 15 U.S.C. §§ 15, 22 because Defendant transacts business in this district and because a substantial part of the events giving rise to this complaint occurred in this district. More specifically, Defendant monopolized a geographic market within this district.

4.     Defendant is subject to personal jurisdiction in California because it is a California charter city with a California address that conducts business in California.

## PARTIES

5.     Plaintiff AmeriCare MedServices, Inc. is a family-owned, Orange County-based California corporation qualified and licensed to provide emergency ambulance service throughout Orange County. AmeriCare has been serving Orange County since its formation in 1996.

6.     Defendant City of Huntington Beach is a California charter city with its principal place of business at 2000 Main Street, Huntington Beach, California 92648.

7.     The city and its employees and agents participated personally in the unlawful conduct challenged in this complaint and, to the extent they did not personally participate, they authorized, acquiesced, set in motion, or otherwise failed to take necessary steps to prevent the acts complained of in this complaint.

COMPLAINT

BONA LAW PC
BUSINESSJUSTICE.COM

# SUBSTANTIVE ALLEGATIONS

## The Statutory Scheme

8.      Prior to 1980, the law governing prehospital EMS in California was haphazard; cities, counties, and public districts were not required to, and had little guidance or means to, coordinate or integrate their operations.

9.      In 1980, the California legislature imposed a new scheme for the provision of prehospital EMS designed to create a new coordinated system for the provision of prehospital EMS with its passage of the Emergency Medical Services System and the Pre-Hospital Emergency Medical Care Personnel Act.

10.     The act created a new manner of local administration of prehospital EMS, providing two tiers of governance: (1) the EMSA, and (2) the local EMS agency, in this case the Orange County Emergency Medical Services ("OCEMS") section of the Orange County Department of Health.

11.     Among the EMSA's duties are the power to review and approve the prehospital EMS plans submitted by local EMS agencies to determine whether the plans "effectively meet the needs of the persons served" and are consistent with the law and Authority guidelines and regulation.

12.     The local EMS agency, on the other hand, has the power and responsibility to provide prehospital EMS throughout its area of responsibility. It develops and submits for approval its plan for prehospital EMS in the area of its responsibility.

COMPLAINT

13.    The legislative scheme allows a local EMS agency to designate one of two modes for the provision of EMS services in any particular geographic area within its purview: (1) exclusive operating areas and (2) non-exclusive operating areas.

14.    In effect, an exclusive operating area allows the local EMS to create monopolies in the provision of prehospital EMS *provided* that the local EMS uses a competitive process for awarding those monopolies. Cal. Health & Safety Code § 1797.224. The local EMS can also designate an exclusive operating area through "grandfathering" an area in which a particular provider or providers have been operating without interruption since January 1, 1981. *Id.*

15.    In non-exclusive operating areas, prehospital EMS providers compete in an open market. In Orange County, these private ambulance services are subject to a rigorous licensing and qualification process and must provide services according to rates predetermined by OCEMS. AmeriCare is fully licensed and qualified by OCEMS.

16.    Under the scheme, the local EMS must define and describe each operating area within its jurisdiction in its local EMS plan submitted to EMSA. It must designate each area as exclusive or non-exclusive.

17.    Mindful that the new prehospital EMS scheme relies on a competitive marketplace that would supplant existing services in some municipalities, the legislature made one narrow exception to the system of local EMS agency control: a municipality that had contracted or provided for its own prehospital EMS as of January 1,

COMPLAINT

1981 could choose whether to continue administering its own prehospital EMS or to enter into an agreement with the local EMS agency. *See* Cal. Health & Safety Code § 1797.201. Cities that chose to retain their power to administer prehospital EMS colloquially call this power ".201 rights".

18.     But this control does not allow cities to create monopolies by their own fiat. Section 1797.224 allows *only* local EMS agencies such as OCEMS, acting through an EMSA-approved plan, to create exclusive operating areas:

> A local EMS agency may create one or more exclusive operating areas in the development of a local plan, if a competitive process is utilized to select the provider or providers of the services pursuant to the plan. No competitive process is required if the local EMS agency develops or implements a local plan that continues the use of existing providers operating within a local EMS area in the manner and scope in which the services have been provided without interruption since January 1, 1981.

Cal. Health & Safety Code § 1797.224 (West).

19.     The California Supreme Court has explained that while

> a local EMS agency's ability to create [exclusive operating areas] may not supplant the [cities'] ability to continue to control EMS operations over which they have historically exercised control[, n]othing in this reference to section 1797.201 suggests that cities . . . are

COMPLAINT

to be allowed to expand their services, or to create their own exclusive operating areas.

*Cty. of San Bernardino v. City of San Bernardino*, 15 Cal. 4th 909, 932 (1997).

20.     Therefore, even where a city retains .201 rights, operating areas can only be designated as exclusive by the local EMS if the city can establish either (1) grandfathering, or (2) that it utilized a competitive process to select its current provider in the last ten years.

21.     Otherwise, the operating area must be designated as a non-exclusive operating area in which restraints of trade imposed by a local government entity are not immune from antitrust liability under the state action doctrine.

**Prehospital EMS in Huntington Beach**

22.     Starting in the 1960s, the City of Huntington Beach had a *de facto*, unwritten agreement with Seals Ambulance Services, Inc. to provide emergency ambulance service within Huntington Beach city limits.

23.     The City of Huntington Beach retained its .201 rights until 1986, when it requested and entered into a contract with Orange County "to administer emergency response ambulance service to provide uniformity throughout the County." *See* Exhibit A at 20.

24.     Under the contract, the city gave its authority to administer prehospital EMS, including licensing and regulating prehospital EMS. In return, the city was required to adopt the Orange County model ambulance ordinance, which provides for competitive

COMPLAINT

Bona Law PC
BusinessJustice.com

bidding, standards for licensure, maximum rates for private providers, among other things.

25.     Although the city chose to repudiate its power to administer prehospital EMS, Orange County allowed the city to utilize its own competitive request for proposal (RFP) process if it so chose. This allowed the city to retain minimal controls over service levels and operations established through the RFP process. The city's stated purpose in opting into Orange County administration was to "limit the city's liability in any antitrust action taken" under its exclusive need-and-necessity permit system and *de facto* agreement with Seals.

26.     The city did not conduct an RFP as required by the ordinance. Seals continued to operate exclusively within the city until 1993.

27.     But in the midst of a recession and the effects of Proposition 13, the city followed suit with many other cities in California: rather than balance its budget, it increased the variety of services performed by its fire department, expanding into lucrative new revenue-generating domains.

28.     In 1993, the City of Huntington Beach ceased using its existing provider and entered, for the first time, into the ambulance business itself. Its legally and factually untenable position appears to have been that (a) it had .201 rights, and (b) as a result of those .201 rights, it could establish a new monopoly of its own.

29.     Within one year of establishing its monopoly, the city announced rate increases above the rates authorized by OCEMS for

COMPLAINT

BONA LAW PC
BUSINESSJUSTICE.COM

private licensed ambulance services. *See* Exhibit B. In the years since, it has raised its rates astronomically.

30.     Immediately after establishing its monopoly, the city cut back on service levels previously provided within AO9. Because the city was not subject to the licensing and regulation requirements of the Orange County ambulance ordinance, it decided to cut staffing during peak periods below minimum levels required of licensed ambulance services.

31.     Moreover, the city's service provided only three ambulance units compared to four primary and four available backup ambulance units previously provided.

32.     OCEMS may only designate and maintain exclusive zones in its local EMS plan—and EMSA will only approve such a designation—if a city can establish one of two criteria: (1) a competitive bidding process was used in the last ten years to contract with the highest ranked bidder, or (2) grandfathering. Under this criteria, OCEMS has determined that only the cities of Brea, Santa Ana, and Westminster could be labeled as city-administered zones enjoying exclusivity under the plan, whether due to competitive bidding or grandfathering.

33.     In 2002, OCEMS re-evaluated its EMS plan. OCEMS determined that AO9 failed to meet either criterion for the exclusive operating area designation under California Health and Safety Code Section 1797.224. OCEMS submitted its amended plan designating AO9 as a non-exclusive operating area to EMSA, which EMSA approved.

Bona Law PC
BusinessJustice.com

COMPLAINT

34.     The city never placed any private ambulance company in the rotation for service calls, illegally maintaining its monopoly in a non-exclusive zone.

### City Excludes AmeriCare

35.     AmeriCare submitted a written request to OCEMS February 25, 2015 to be placed on rotation within AO9, the non-exclusive operating area comprising Huntington Beach. OCEMS replied March 18, 2015 directing AmeriCare to contact the city manager for the incorporated city within the zone.

36.     Although OCEMS has the responsibility and authority to administer non-exclusive zones not retained by cities validly exercising .201 rights, OCEMS has entered into agreements in which it allows certain cities to administer, in part, the provision of prehospital EMS within their its jurisdiction. OCEMS calls these areas "city administered" and the Orange County attorney has expressly disclaimed that "city administered" is not a determination regarding .201 rights. Instead, "OCEMS does not currently believe the determination of which cities can legitimately claim .201 rights is one to be made by [it]." *See* Exhibit C at 33. OCEMS nevertheless continues to assert its sole authority to determine exclusivity because ".201 rights and exclusivity are two different things." *Id*. at 34.

37.     AmeriCare submitted its written request to Fred Wilson, city manager of City of Huntington Beach March 19, 2015, explaining its correspondence with OCEMS and requesting that either the city arrange for AmeriCare to be placed into the prehospital EMS

rotation or state a position that it does not have responsibility for the administration of prehospital EMS. Ex. D.

38.     The city sent a scathing response in which it asserted, contrary to well-established law, that it has the authority to designate its own exclusive area and to do so without any competitive process. Moreover, it stated that a city retaining .201 rights "is not required to open up its jurisdiction, on a rotation or any other basis, to additional providers." Ex. E at 45.

39.     But for the city's monopolization of the market, AmeriCare and other private ambulance providers would have been placed in rotation and patients would have paid lower prices for faster and better service. During periods of higher volume, more ambulances would have been available from other providers and patients would have been stabilized and transported for hospital care more quickly.

40.     AmeriCare lost business as a result of the city's actions.

## Claims Limitation Not Applicable

41.     AmeriCare has complied with all applicable presentation of claims to local governments' requirements under California law. The City of Huntington Beach denied AmeriCare's claim February 29, 2016, and therefore the state law claims for damages are timely filed.

## COUNT I

## Monopolization, 15 U.S.C. § 2

42.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

12

Bona Law PC
BusinessJustice.com

43.      Section 2 of the Sherman Act, 15 U.S.C. § 2 provides:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony . . . .

44.      Defendant City of Huntington Beach possesses monopoly power in the market for the provision of prehospital EMS in the Huntington Beach area.

45.      Through the conduct described herein, the city has willfully maintained that monopoly power by anticompetitive and exclusionary conduct. It has acted with the intent to maintain its monopoly power, and its illegal conduct has enabled it to do so, in violation of Section 2 of the Sherman Act.

46.      The market has been harmed as a result of the city's conduct as consumers of prehospital EMS have been forced to pay supracompetitive prices while receiving lower quality, slower service.

47.      AmeriCare provides superior prehospital EMS at lower prices and provides higher quality and faster service.

48.      AmeriCare has been harmed by the city's willful maintenance of its monopoly and its exclusion of all competitors.

49.      The City of Huntington Beach has acted in direct contravention of the policy of the State of California with regard to displacement of competition for prehospital EMS, and therefore is not entitled to immunity under the state action doctrine.

BONA LAW PC
BUSINESSJUSTICE.COM

COMPLAINT

50.     Moreover, the city is not entitled to immunity under the state action doctrine because it is a market participant.

## COUNT II

## Attempted Monopolization, 15 U.S.C. § 2

51.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

52.     Defendant City of Huntington Beach has willfully engaged in a course of conduct, including anticompetitive and exclusionary actions, with the specific intent of monopolizing the market for prehospital EMS in the area of Huntington Beach, and there is a dangerous probability that, unless restrained, anticompetitive conditions will occur, in violation of Section 2 of the Sherman Act.

53.     The market has been harmed as a result of the city's conduct as consumers of prehospital EMS have been forced to pay supracompetitive prices while receiving lower quality, slower service.

54.     AmeriCare provides superior prehospital EMS at lower prices and provides higher quality and faster service.

55.     AmeriCare has been harmed by the city's willful maintenance of its monopoly and its exclusion of all competitors.

56.     The City of Huntington Beach has acted in direct contravention of the clearly articulated policy of the State of California with regard to displacement of competition for prehospital EMS.

57.     Moreover, the city is not entitled to immunity under the state action doctrine because it is a market participant.

Bona Law PC
BusinessJustice.com

COMPLAINT

**COUNT III**

**Unfair Competition, Cal. Bus. & Prof. Code § 17200**

58.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

59.     Defendant City of Huntington Beach's conduct constitutes unfair, unlawful, and/or fraudulent business practices within the meaning of California Business & Professions Code § 17200.

60.     As a result of those practices, AmeriCare suffered damages in an amount to be determined at trial and is entitled to reasonable attorney's fees.

**COUNT IV**

**Declaration of Rights, Cal. Civ. Proc. Code § 1060**

61.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

62.     California Health and Safety Code Section 1797.224 provides that "[a] local EMS agency may create one or more exclusive operating areas in the development of a local plan, if a competitive process is utilized to select the provider or providers of the services pursuant to the plan."

63.     OCEMS has designated AO9, the area comprising Huntington Beach, as non-exclusive and has duly licensed AmeriCare as a prehospital EMS provider which Huntington Beach must place in rotation upon its request.

BONA LAW PC
BUSINESSJUSTICE.COM

COMPLAINT

64.     Defendant City of Huntington Beach incorrectly argues that Section 1797.224 does not apply to it.

65.     AmeriCare therefore seeks a declaration from this Court declaring that the city lacks authority to create an exclusive operating area under Section 1797.224 and that the city repudiated any rights it once had under Section 1797.201.

**COUNT V**

**Declaratory Judgment, 28 U.S.C. § 2201**

66.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates by reference each preceding paragraph as though fully set forth at length herein.

67.     An actual and justiciable controversy exists between AmeriCare and the city concerning the city's violations of federal antitrust law and the California EMS laws.

68.     Contrary to the city's assertions, it has not retained any rights or powers under Section 1797.201.

69.     Contrary to the city's assertions, it does not have the authority to create an exclusive operating area.

70.     Contrary to the city's assertions, AmeriCare is entitled to be placed into rotation in AO9, which is designated as non-exclusive by OCEMS.

71.     Contrary to the city's assertions, it is not grandfathered because it did not have an existing EMS service that has been provided uninterrupted since January 1, 1981.

72.     Contrary to the city's assertions, it has attempted and succeeded at maintaining an illegal monopoly in restraint of interstate

COMPLAINT

commerce that is not immune from liability under the state action doctrine.

73.      The city's actions and assertions described above have caused, and will continue to cause, irreparable harm to AmeriCare and the public. AmeriCare has no adequate remedy at law.

74.      AmeriCare therefore seeks a declaration from this Court declaring that the city lacks authority to create an exclusive operating area under Section 1797.224 and that the city repudiated any rights it once had under Section 1797.201. Moreover, AmeriCare seeks a declaration from this Court that the city has attempted and maintained an illegal monopoly under Section 2 of the Sherman Act for which it is not entitled to immunity under the state action doctrine.

## REQUEST FOR RELIEF

**WHEREFORE,** AmeriCare requests that this Court:

A. Enter a temporary restraining order against Defendant to enjoin it from continuing its illegal acts;

B. Declare that Defendant's conduct violates Section 2 of the Sherman Act and California Health & Safety Code Sections 1797.201 and 1797.224;

C. Enter judgment against Defendant;

D. Award AmeriCare compensatory damages in three times the amount sustained by it as a result of Defendant's actions, to be determined at trial as provided in 15 U.S.C. § 15(a);

E. Award AmeriCare pre- and post-judgment interest at the applicable rates on all amounts awarded, as provided in 15 U.S.C. § 15(a);

17

F. Award AmeriCare its costs and expenses of this action, including its reasonable attorney's fees necessarily incurred in bringing and pressing this case, as provided in 15 U.S.C. § 15(a);

G. Grant permanent injunctive relief to prevent the recurrence of the violations for which redress is sought in this complaint; and

H. Order any other such relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims.

DATED: August 29, 2016

Bona Law PC

_/s/ Jarod Bona_

JAROD BONA

4275 Executive Square, Suite 200
La Jolla, CA 920370
858.964.4589
858.964.2301 (fax)
jarod.bona@bonalawpc.com

_Attorney for Plaintiff_

COMPLAINT

18

EXHIBIT A



**C**OUNTY OF **O**RANGE

**HEALTH CARE AGENCY**

PUBLIC HEALTH AND MEDICAL SERVICES
EMERGENCY MEDICAL SERVICES
625 N. ROSS STREET
BUILDING 12
SANTA ANA, CALIFORNIA 92701
(714) 834-6447

#035.09

MAILING ADDRESS:
P.O. BOX 355
SANTA ANA, CA 92702

October 29, 1986

City of Huntington Beach
2000 Main Street
P.O. Box 190
Huntington Beach, CA  92648

Attn:  Clerk of the Council

Subject:  Agreement Between the County of Orange and the City
          of Huntington Beach for Provision of the Licensing
          and Regulation of Ambulance Services

Enclosed is the City's executed original of the above referenced
agreement for your records.

Should you need any additional information regarding this
agreement or ambulance licensing or regulation, please contact me
(834-6447).

Sincerely,

Marilee Miller

Marilee Miller
Medical Transportation Coordinator

MM:ee

Enclosure

**RECEIVED**

OCT 31 1986

CITY OF HUNTINGTON BEACH
CITY COUNCIL OFFICE

19

# REQUEST FOR CITY COUNCIL ACTION

Date _____

| | |
|---|---|
| Submitted to: | Honorable Mayor and City Council |
| Submitted by: | Charles W. Thompson, City Administrator |
| Prepared by: | Raymond C. Picard, Fire Chief |
| Subject: | AMBULANCE ORDINANCE |
| Consistent with Council Policy? | [X] Yes [ ] New Policy or Exception |

ORD #2852

Statement of Issue, Recommendation, Analysis, Funding Source, Alternative Actions, Attachments:

**STATEMENT OF ISSUE:**
The City is currently exclusively receiving ambulance service via a need and necessity permit action adopted by the City Council in May 1969. A new Ambulance Ordinance and competitive bid action is required to limit the city's liability in any antitrust action taken and to place licensing inspection and enforcement under County Emergency Medical Services (EMS).

**RECOMMENDATION:**
Approve the model ordinance and execute an agreement with the County of Orange to administer emergency response ambulance service to provide uniformity throughout the County.

**ANALYSIS:**
There are several distinct advantages nonexistent under current regulations. Competition via a Request For Proposal (RFP) competitive bid process will be established for emergency ambulance service. Non-emergency ambulance service will continue to be deregulated. The County will assume inspection, investigation, and control responsibilities and assure adherence to State and County EMS requirements. Emergency service charges will be the only charges regulated and non-emergency service will be deregulated. The City will have control over service levels and operations which will be established in the RFP process. The City has the right to establish operational requirements and standards via the RFP process.

**FUNDING SOURCES:**
The County will assume all costs for administration of the contract. They will collect a fee for application for service and inspection. Minimal staff time will be required for RFP process preparation. A fee may be charged for the application and be considered as a revenue source to offset costs.

**ALTERNATIVE ACTIONS:**
The City may legally continue to operate via existing need and necessity action but may be vulnerable to any trust action initiated by other service providers. An ordinance can be formulated by our own City staff and the self-administration of the program. This will impact the Fire and Police staff for inspection, enforcement and administration. Fees collected would not offset administrative costs.

**ATTACHMENTS:**
Proposed Ambulance Ordinance.
Agreement with County for provisions of licensing and regulation of ambulance services.
5708f

FIO 4/84

20



## SUMMARY OF PROPOSED AMBULANCE ORDINANCE

Under the current city policy, ambulance services operate in the city of Huntington Beach only after obtaining a Certificate of Need and Necessity. This is obtained by filing an application with the City Clerk's Office. Issuance of this certificate is made only after the ambulance service has provided the following:

1. Proof of insurance;
2. A list of officers and partners in the corporation;
3. The name, age, business and residence addresses of the applicant;
4. A description of each vehicle to be used;
5. A rate schedule set by the applicant and approved by Council;
6. A financial statement and;
7. Additional information as requested by Council.

The applicant is also required to obtain a business license.

The new ordinance contracts with the county of Orange for licensing and regulating of ambulance service within the boundaries of the city of Huntington Beach. In return for this service, the county will retain any and all fees authorized by the city's municipal ordinance and collected by county for the administration of the Ordinance.

This new ordinance sets forth the requirements established by the county for operating an ambulance service under their jurisdiction. The county requirements include those in the existing ordinance and adds to these the following:

1. Personnel standards;
2. Limitations on transference;
3. A maximum rate schedule established by the Board of Supervisors;
4. An outline of procedures for suspension or revocation of the license;
5. Procedures for handling complaints against a licensed service;
6. And an appeal process.

In general, the new ordinance to be administered by the county is more detailed as to requirements, etc., and more stringent than the existing ordinance. As noted in Chief Picard's analysis, the new ordinance adds the advantage of a competitive bid process and relieves the city of responsibility for inspecting, regulating, and handling complaints.

One further item worthy of noting is that only emergency services are regulated under the new ordinance. Non-emergency ambulance services remain regulated to minimum standards and not subject to need and necessity.

In the event you would like to make a more detailed comparison, a copy of the existing ordinance has been attached and can be identified by the slash mark across its text.

21

SUMMARY OF AGREEMENT BETWEEN THE COUNTY OF ORANGE

AND THE CITY OF HUNTINGTON BEACH FOR THE

LICENSING AND REGULATION OF AMBULANCE SERVICES

1. The Agreement calls for the county to license and regulate ambulance services within the corporate limits of the City of Huntington Beach.

2. The Agreement provides for the enforcement of state statues and municipal ordinances and regulations relating to ambulance services that are the same as those adopted by the County Board of Supervisors and any that we may specify.

3. The basic level of service shall be the same as is provided in the unincorporated areas of the county by the county's Health Care Agency. The emergency level of service shall be that as specified by the city in our RFP.

4. The licensing and regulation of the ambulance services will be the responsibility of the county. Any special supplies, stationary, notices, and forms issued in the name of the city shall be supplied to the county and paid for by the City of Huntington Beach.

5. The city has the right to examine the accounting books and records.

6. The ordinance adopted by the City Council is required to be the same as that adopted by the County of Orange. The city is also required to adopt all amendments that are adopted by the Board of Supervisors to the ambulance ordinances that apply to the City of Huntington Beach. These amendments are to be adopted within 120 days of receiving written notice from the county.

7. County officers and employees of the ambulance service within the community are deemed to be agents of the city while performing a service for the city.

8. The county will retain all fees authorized by the city's Municipal Ambulance Ordinance. All fees shall be collected by the county.

9. Contract will stay in force until either party gives a 120 day written notice of a desire to terminate said contract.

10. If the city fails to comply with the Ambulance Ordinance as adopted by the county, the county may terminate the agreement within 5 days of written notice.

11. Except for notices of termination, all written communication affecting this agreement shall be sent by U. S. mail, first class, to the address indicated in the agreement.

12. Termination notices shall be sent by U. S. mail-certified, with a return receipt requested.

13. The contract provides for a mutual indemnification clause.

22

2102a

AGREEMENT
BETWEEN
COUNTY OF ORANGE
AND
*City of Huntington Beach*
FOR PROVISION OF THE
LICENSING AND REGULATION OF
AMBULANCE SERVICES

THIS AGREEMENT, entered into this __18__ day of _____June_____, which date is enumerated for purposes of reference only, is by and between the COUNTY OF ORANGE, hereinafter referred to as "COUNTY," and the CITY OF __Huntington Beach__, hereinafter referred to as "CITY." This Agreement shall be administered by the Health Care Agency of the County of Orange, hereinafter referred to as "ADMINISTRATOR."

WITNESSETH:

WHEREAS, CITY desires to contract with COUNTY to provide for the licensing and regulation of ambulance services within CITY's boundaries; and

WHEREAS, COUNTY is agreeable to rendering such services on terms and conditions set forth herein;

NOW, THEREFORE, IT IS MUTUALLY AGREED AS FOLLOWS:

1.   SERVICES:

A.   COUNTY shall perform the licensing and regulation of ambulance services within the corporate limits of CITY, in accordance with the laws of the State of California, and shall give the prescribed notices required.

23

B.   The scope of said services shall be limited to the enforcement of State statutes and such municipal ordinances and regulations relating to the licensing and regulation of ambulance services as are

the same as those adopted by County's Board of Supervisors.

C.   Services shall not include the enforcement of additional municipal ordinances and regulations relating to ambulance service as CITY may adopt.

D.   The level of service to be provided by COUNTY shall be that same basic level of service as that provided to unincorporated areas of COUNTY by the Health Care Agency during the term of this Agreement.

E.   The licensing and regulation of ambulance services and other matters incidental to the performance of such services by COUNTY and the control of personnel so employed by COUNTY shall remain with COUNTY.

F.   For the purpose of performing said functions, COUNTY shall furnish and supply all necessary labor, supervision, equipment, and supplies necessary to maintain the level of service to be rendered hereunder; except that in all instances wherein special supplies, stationery, notices, and forms must be issued in the name of CITY, the same shall be supplied to COUNTY and paid for by CITY.

G.   COUNTY shall keep books and records in such form and manner as the Auditor-Controller of COUNTY shall specify.  Said books and records shall be open for examination by CITY at all reasonable times.

H.   In event of dispute between the the parties as to the extent of the duties and functions to be rendered hereunder, or the level and manner of performance of such service, the determination thereof made by ADMINISTRATOR shall be final and conclusive as between the parties hereto.

2.   AUTHORITY TO PERFORM SERVICES

A.   CITY shall enact and maintain in full force and effect all provisions of Article 1, Division 9, Title 4, of the Codified Ordinances of the County of Orange, including the same fee schedule, and any other County regulations relating to the licensing and regulation of ambulance services

-2-

which may be adopted by the Orange County Board of Supervisors. CITY shall, upon request of ADMINISTRATOR, enact the same amendments to CITY's municipal code as those adopted by COUNTY's Board of Supervisors within one hundred twenty (120) days of notification in writing by ADMINISTRATOR; provided, however, CITY is not required to adopt any provision or amendment which does not apply to CITY.

B. For the purpose of performing services pursuant to this Agreement, and for the purpose of giving official status to the performance thereof where necessary, every COUNTY officer and employee engaged in the performance of any service hereunder shall be deemed to be an agent of CITY while performing services for CITY, which services are within the scope of this Agreement and are purely municipal functions. COUNTY shall have all powers of CITY and shall receive all cooperation possible from CITY to enable efficient enforcement of applicable municipal ordinances and regulations and to effectuate collections called for thereunder.

3. <u>COMPENSATION</u>

For and in consideration of the licensing and regulation services rendered by COUNTY pursuant to this Agreement, CITY agrees that COUNTY shall retain any and all fees authorized by CITY's municipal ordinance and collected by COUNTY. CITY shall cooperate with COUNTY to effectuate such collections.

4. <u>STATUS OF CONTRACTOR</u>

COUNTY is, and shall at all times be deemed to be, an independent contractor and shall be wholly responsible for the manner in which it performs the services required of it by the terms of this Agreement. Nothing herein contained shall be construed as creating the relationship of employer and employee between CITY and COUNTY or any of COUNTY's agents or employees. COUNTY, its agents and employees, shall not be entitled to any rights or privileges of CITY employees and shall not be considered in any manner to be

-3-                                    25

1  CITY employees.

2  5.  TERM

3  This Agreement shall commence on _June 18_  19_86_ and shall

4  remain effective until terminated as provided herein.

5  6.  TERMINATION PROVISIONS

6  A.  Either party may terminate this Agreement without cause, upon one

7  hundred twenty (120) days' written notice given the other party.

8  B.  COUNTY may terminate this Agreement upon five (5) days' written

9  notice at any time that CITY fails to enact and to maintain in full force and

10  effect all provisions relating to the licensing and regulation of ambulance

11  services as set forth in Paragraph 2.A. of this Agreement.

12  C.  Termination of this Agreement shall not affect the validity or

13  term of any license issued by COUNTY.

14  7.  NOTICES

15  A.  Except for Notices of Termination, all notices, claims

16  correspondence, reports and/or statements authorized or required by this

17  Agreement shall be effective when written and deposited in the United States

18  mail, first class postage prepaid and addressed as follows:

19  COUNTY:  HCA/Emergency Medical Services
              P. O. Box 355
20              Santa Ana, CA 92702

21  City:

22

23  B.  Termination Notices shall be effective when written and deposited

24  in the United States Mail, certified, return receipt requested, and addressed

25  as above.

26  8.  MUTUAL INDEMNIFICATION
                                            26
27  Each party agrees to indemnify and hold harmless the other party, its

28  officers, agents and employees from all liability, claims, losses and

-4-



1    demands, including defense costs, whether resulting from court action or

2    otherwise, arising out of or connected with the acts or omissions of the

3    indemnifying party, its officers, agents or employees, or the condition of

4    property used in the performance of this Agreement.

5    //

6    //

7    //

8    //

9    //

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //                 27

26   //

27   //

28   //

IN WITNESS WHEREOF, the parties have executed this Agreement in the County of Orange, California.

COUNTY OF ORANGE

by _Ralph B. Clark_
Chairman, Board of Supervisors

ATTEST:

by _Linda D. Roberts_
Linda I. Roberts
Clerk of the Board of Supervisors
of Orange County, California

DATED: __10-6-86__

APPROVED AS TO FORM:

ADRIAN KUYPER, COUNTY COUNSEL
ORANGE COUNTY, CALIFORNIA

by _____
Deputy

DATED: _October 5, 1986_


CITY OF _HUNTINGTON BEACH_
a municipal corporation

by _Robert P. Mandic_
Mayor

ATTEST:

by _Alicia M. Wentworth_
Clerk of the Council

DATED: _June 18, 1986_


APPROVED AS TO FORM:

by _____
City Attorney   _2-26-86_

DATED: _____

28

-6-

EXHIBIT B

RESOLUTION NO. __6652__

A RESOLUTION OF THE CITY COUNCIL OF THE CITY OF
HUNTINGTON BEACH SETTING ADVANCED LIFE SUPPORT,
BASIC LIFE SUPPORT AND EMERGENCY AMBULANCE
TRANSPORTATION FEES TO BE CHARGED BY THE FIRE
DEPARTMENT OF THE CITY OF HUNTINGTON BEACH

WHEREAS, Section 8.68.070 of the Huntington Beach Municipal Code provides that the

City Council shall by resolution establish fees for all recipients of Advanced Life Support, Basic

Life Support and Emergency Ambulance Transportation services provided by the City of

Huntington Beach Fire Department; and

In order to assist in defraying the cost of paramedic and ambulance services, the City

Council desires to revise fees to be paid by persons who utilize or benefit from having said

paramedic and ambulance services readily available; and

The fees hereinafter established do not exceed the estimated reasonable cost of providing

paramedic and emergency ambulance services in the City of Huntington Beach for which the fees

are charged; and

The City of Huntington Beach has complied with the notice provisions of the California

Government Code pertaining to establishing fees.

NOW, THEREFORE, BE IT RESOLVED by the City Council of the City of Huntington

Beach that the fees set forth herein below are hereby established as follows:

| VOLUNTARY MEMBERSHIP FEE | ANNUAL FEE |
|---|---|
| Household | $36.00 |
| Low Income Household | $18.00 |
| Business/each group of 10 employees | $36.00 |

| Fire Department Fees | Non-FireMed Member Rate | FireMed Member Insurance Rate |
|---|---|---|
| **Basic Life Support (BLS) -** Emergencies requiring Basic Life Support services rendered by paramedics and/or EMT personnel | $150.00 | $125.00 |
| **Advanced Life Support (ALS) -** Emergencies requiring Advanced Life Support services rendered by paramedic personnel | $250.00 | $200.00 |

## GROUND AMBULANCE TRANSPORTATION FEES

| Type | Basis for Charge | Non-FireMed Member Rate | FireMed Member Insurance Rate |
|---|---|---|---|
| Emergency Base Rate | Applicable at time of request for ambulance response | $242.75 | $190.00 |
| Mileage | Per patient mile or fraction thereof | $10.05 | $8.00 |
| Night Call | Applicable when time service request is between 7:00 p.m. and 7:00 a.m. | $40.90 | $30.00 |
| Oxygen | Applicable when oxygen is administered and includes mask or cannula | $40.90 | $30.00 |
| Standby: | Per 15 minutes after the first 15 minutes and any fraction thereof | $29.20 | $22.00 |
| Expendable Medical Supplies | Maximum per response or fair market value, whichever is least | $13.30 | $10.00 |

6/resolut/emergency/10/31/94

30

665 2

## EXEMPTION AND REDUCTION OF CHARGES

Determination for an exemption or reduction of fees shall be made by the Fire Chief.  His findings shall be based on the following criteria:

**(a)**   **Membership Fees - Low Income household:**
Persons who wish to participate in the FireMed program but claim an inability to pay because of hardship conditions may enroll at the "Low Income Household" rate.  Determination shall be based on "HUD Income guidelines - Very Low Income Category" currently on file at the City's office of the Housing Rehabilitation Administrator.

**(b)**   **User Fees - Inability to Pay:**
Persons receiving services from the FireMed Program and claim an inability to pay may apply to the Fire Chief for a reduction of charges.  The Fire Chief will evaluate the availability of insurance, government assisted programs and total household income to determine the reduction of fees.  The Fire Chief may reduce fees to no less than the annual membership fee.

BE IT FURTHER RESOLVED that the effective date of the fees set forth in this resolution shall be thirty (30) days after adoption of this resolution.  Nothing contained herein shall prohibit the combining of Fire Department and ambulance fees for billing purposes.

PASSED AND ADOPTED by the City Council of the City of Huntington Beach at a regular meeting thereof held on the 21st day of ____November____, 1994.

_____
Mayor

ATTEST:

_____
City Clerk

APPROVED AS TO FORM:

_____
City Attorney

REVIEWED AND APPROVED:

_____
City Administrator

INITIATED AND APPROVED:

_____
Fire Chief

6/resolut/emergency/10/27/94

3

31

6652

Res. No. 6652

**STATE OF CALIFORNIA** )
**COUNTY OF ORANGE** )  **ss:**
**CITY OF HUNTINGTON BEACH** )

I, CONNIE BROCKWAY, the duly elected, qualified City Clerk of the City of Huntington Beach, and ex-officio Clerk of the City Council of said City, do hereby certify that the whole number of members of the City Council of the City of Huntington Beach is seven; that the foregoing resolution was passed and adopted by the affirmative vote of at least a majority of all the members of said City Council at a **regular** meeting thereof held on the **21st** dayof **November, 1994**, by the following vote:


**AYES:**      **Councilmembers:**
          Silva, Bauer, Robitaille, Moulton-Patterson, Winchell, Leipzig, Sullivan

**NOES:**      **Councilmembers:**
          None

**ABSENT:**      **Councilmembers:**
          None


*Connie Brockway*

City Clerk and ex-officio Clerk
of the City Council of the City
of Huntington Beach, California

32

EXHIBIT C



THE COUNTY COUNSEL
COUNTY OF ORANGE
333 W. SANTA ANA BLVD., SUITE 407
SANTA ANA, CA 92701
MAILING ADDRESS: P.O. BOX 1379
SANTA ANA, CA 92702-1379
(714) 834-3300
FAX: (714) 834-2359

James C. Harman
Assistant
(714) 834-5257

February 22, 2016

LEON J. PAGE
COUNTY COUNSEL

ANN E. FLETCHER
JACK W. GOLDEN
MARIANNE VAN RIPER
SENIOR ASSISTANTS

JAMES C. HARMAN
ASSISTANT

KAREN L. CHRISTENSEN
JAMES C. HARVEY
ADRIENNE SAURO HECKMAN
MARK R. HOWE
LAURA D. KNAPP
THOMAS A. "MAT" MILLER
NICOLE A. SIMS
DANA J. STITS
SUPERVISING DEPUTIES

JASON C. BROWN
DIRECTOR OF ADMINISTRATION

JANELLE B. PRICE
LAURIE A. SHADE
DANIEL H. SHEPHARD
JOYCE RILEY
STEVEN C. MILLER
CAROLYN S. FROST
ROBERT N. ERVAIS
NIKHIL G. DAFTARY
JEANNIE SU
WENDY J. PHILLIPS
TERJ L. MAKSOUDIAN
ANGELICA CASTILLO DAFTARY
MICHAEL A. HAUBERT
RYAN M. F. BARON
BRAD R. ROSIN
SAUL REYES
AURELIO TORRE
MARK D. SERVINO
DEBBIE TORREZ
JACQUELINE GUZMAN
ANDREA COLLER
PAUL M. ALBARIAN
D. KEVIN DUNN
LORI A. TORRISI
MASSOUD SHAMEL
SHARON VICTORIA DURBIN
REBECCA S. LEEDS
NICOLE M. WALSH
ELIZABETH A. PEJEAU
LAUREN C. KRAMER
GABRIEL J. BOWNE
JULIA C. WOO
LAUREL M. TIPPETT
MARK A. BATARSE
ADAM C. CLANTON
KRISTEN K. LECONG
ERIC A. DIVINE
JAMES D. P. STEINMANN
VANESSA D. ATKINS
SUZANNE E. SHOAI
DEBORAH M. MORSE
MATTHEW S. SPRISSLER
KAYLA N. WATSON
CAROLYN M. KHOUZAM
ANNIE J. LOO
RONALD T. MAGSAYSAY
JOHN P. CLEVELAND
SAMARA BELGARDE
CHRISTOPHER S. ANDERSON
JUSTIN A. GRAHAM
BRITTANY MCLEAN
JEFFREY A. STOCK
MARK N. SANCHEZ
GOLNAZ ZANDIEH
CYNTHIA G. INDA
DEPUTIES

Mr. Stephen M. Wontrobski
27132 Sombras
Mission Viejo, CA 92692

Re:      Costa Mesa and Health and Safety Code section 1797.201

Dear Mr. Wontrobski:

On February 11, 2016, you wrote a letter to Mark Refowitz, Director of the Orange County Health Care Agency, inquiring whether the City of Costa Mesa can legitimately claim rights to administer emergency ambulance contracts under Health and Safety Code section 1797.201 (".201"). Since you have raised a legal issue, we agree with Mr. Refowitz that it would be appropriate for our office to address your inquiry.

In your letter, there is an assumption that Orange County Emergency Medical Services ("OCEMS" the Board of Supervisors-designated local emergency services agency for the County of Orange) has concluded Costa Mesa lacks rights to administer emergency ambulance contracts under .201. In other words, you believe OCEMS denies Costa Mesa's claims of having ".201 rights." You also believe the OCEMS 2014 Emergency Medical Services System Plan (the "Plan") rejects any claim that Costa Mesa has .201 rights.

We are unaware of any instance where OCEMS issued an opinion on Costa Mesa's .201 rights. The Plan does not classify cities or areas as having ".201 rights." Rather, it classifies ambulance operating areas as either OCEMS-administered or city administered. (Plan, Pages 256-257 (copies of which are attached).) The Plan classifies Costa Mesa as a city administered operating area for ambulance services. (Plan, Page 229 (attached).)

Please note that the designation of operating areas as "city administered" rather than those exercising ".201 rights" is not an effort in semantics by OCEMS. The designation reflects two facts. First, cities that are designated as "city administered" do, in fact, administer the emergency ambulance services contracts for ambulances operating within their cities' boundaries. Second, OCEMS does not currently believe the determination of which cities can legitimately claim .201 rights is one to be made by a local emergency medical services agency.

33

Mr. Stephen M. Wontrobski
February 22, 2016
Page 2

The State Emergency Medical Services Agency ("EMSA") notified OCEMS and other local emergency medical services agencies across the state that EMSA will evaluate cities' claims to .201 rights. For instance, EMSA concluded the City of Garden Grove is ineligible to claim .201 rights. EMSA reached this conclusion after performing an evaluation of information provided by OCEMS and the City of Garden Grove. EMSA has not yet provided a similar evaluation of the other Orange County cities that administer ambulance service contracts within their boundaries. Should EMSA commence a review of those cities' claims of .201 rights (including Costa Mesa), OCEMS will provide what documentation or assistance it can to EMSA.

You state in your letter that, "Costa Mesa ceded its 201 rights, when it adopted the Orange County Model Ordinance in the early 1980's by its own City Council passed resolution." According to our research, Costa Mesa passed its ambulance ordinance in 1979, before .201 was enacted in 1980 as part of the Emergency Medical Services System and the Prehospital Emergency Medical Care Personnel Act. In other words, the ordinance was enacted before .201 rights were created and, therefore, it would be difficult to maintain the city ceded rights that didn't exist when it adopted the ordinance. Please also note that the ordinance does not reference having the County or OCEMS administer ambulance services within city limits. Thus, assuming Costa Mesa has .201 rights, it does not appear that there is any agreement or acquiescence by the city to cede such rights to OCEMS. (*County of San Bernardino v City of San Bernardino* (1997) 15 Cal.4th 909, 924). The California Attorney General recently opined that such an agreement between a city and a local emergency services agency must expressly address contract administration. For instance, "a contract between a county or LEMSA and a .201 provider for medical control and oversight of the .201 provider does not extinguish the .201 provider's rights to continue providing prehospital emergency medical services." (97 Ops.Cal.Atty.Gen. 90 (2014).)

It is important to note as well that .201 rights are frequently mistaken for the right to award ambulance contract monopolies under recognized governmental immunity for anti-competitive behavior (a practice termed "exclusivity"). (See, *Community Communications Co. v. Boulder* (1982) 455 U.S. 40.) .201 rights and exclusivity are two different things. ("Section 1797.201 says nothing at all about exclusivity." (*City of Petaluma v. County of Sonoma* (1993) 12 Cal.App.4th 1239, 1244).) While cities might retain .201 rights, they do not have the ability to create exclusive operating areas that are subject to immunity from federal anti-trust claims. Under Health and Safety Code section 1797.224 (".224"), only local emergency medical services agencies such as OCEMS, acting through an EMSA-approved plan, can create exclusive operating areas. The California Supreme Court explained the interplay between .201 and .224 as, "a local EMS agency's ability to create EOA's may not supplant the cities' or fire districts' ability to continue to control EMS operations over which they have historically exercised control. Nothing in this reference to section 1797.201 suggests that cities or fire districts are to be allowed to expand their services, or to create their own exclusive operating areas." (*County of San Bernardino, supra*, 932.)

34

Mr. Stephen M. Wontrobski
February 22, 2016
Page 3

Accordingly, the Plan designates city-administered operating areas as either "exclusive" or "non-exclusive." Zones are non-exclusive unless a city can establish it meets one of the two criteria found in .224: 1) the city continues the use of existing providers operating in the manner and scope in which the services have been provided without interruption since January 1, 1981 (the "grandfathering" provision); or, 2) a competitive process was used to select the ambulance service provider. Only the City of Brea has provided information that qualifies for exclusivity under the grandfathering provision. For a city to qualify for exclusivity under the competitive process provision, EMSA requires the city to have used a competitive process within the last ten years. EMSA also mandates the competitive process must result in the award of the ambulance services contract to the highest ranked bidder(s). Under this EMSA-criteria, only Santa Ana and Westminster could be labeled as city administered zones enjoying exclusivity under the Plan.

You have asked about the status of requests for proposals ("RFP's") in city-administered ambulance service zones. OCEMS is aware of no current RFP's in those areas, but recently became aware that the City of Westminster may be issuing an RFP for ambulance services in 2016.

Lastly, I suspect you will have follow-up questions or requests resulting from this letter. If my suspicion is correct, it may be more efficient to meet along with OCEMS officials and discuss any questions or concerns you have. We welcome the opportunity to meet with you at the County Counsel's office at a mutually convenient time.

Very truly yours,

LEON J. PAGE
COUNTY COUNSEL

By_____
     James C. Harman, Assistant

JCH:po
Attachments (2)

cc: Howard Backer, M.D., EMSA Director
     Tom Duarte, City Attorney, City of Costa Mesa

35

## PHASE 1
### OCEMS Administered Areas: Competitive Process contracts expiring 8/31/14
#### February 2014 – December 2014

| OA | NAME | Unincorporated Areas | Conduct RFP/ Contract Admin | Awarding Agency | Current Provider | Exclusive | RE-DESIGN 2014 |
|---|---|---|---|---|---|---|---|
| 5 | Cypress | | OCEMS | BOS | Care | X | REGION B |
| 10 | Irvine | X | OCEMS | BOS | Doctors | X | REGION C |
| 13 | La Palma | | OCEMS | BOS | Care | X | REGION B |
| 14 | Los Alamitos | X | OCEMS | BOS | Care | X | REGION B |
| 17 | Placentia | X | OCEMS | BOS | Emergency | X | REGION A |
| 19 | San Juan Capistrano | X | OCEMS | BOS | Doctors | X | REGION E |
| 21 | Seal Beach | X | OCEMS | BOS | Care | X | REGION B |
| 22 | Stanton | X | OCEMS | BOS | Care | X | REGION B |
| 23 | Tustin | X | OCEMS | BOS | Doctors | X | REGION C |
| 24 | Villa Park | X | OCEMS | BOS | Americare | X | REGION C |
| 26 | Yorba Linda | X | OCEMS | BOS | Emergency | X | REGION A |
| 28 | Laguna Hills | | OCEMS | BOS | Doctors | X | REGION D |
| 29 | Rancho Santa Margarita | X | OCEMS | BOS | Doctors | X | REGION E |
| 30 | Laguna Niguel | X | OCEMS | BOS | Doctors | X | REGION D |
| 32 | Aliso Viejo | X | OCEMS | BOS | Doctors | X | REGION D |
| 35 | Laguna Woods | | OCEMS | BOS | Doctors | X | REGION D |
| 38 | Mission Viejo | | OCEMS | BOS | Doctors | X | REGION E |
| 39 | Dana Point | | OCEMS | BOS | Doctors | X | REGION D |
| 42 | Lake Forest | X | OCEMS | BOS | Doctors | X | REGION E |

### City Administered Areas: Exclusive (Uninterrupted Existing Provider)

| OA# - Name | | RFP | AWARD | CONTRACT ADMIN | PROVIDER | EXCLUSIVE | 2014 | 2019 |
|---|---|---|---|---|---|---|---|---|
| 2 | Brea | N/A | City | City | Emergency | X | EOA 2 | TBD |

### City Administered Areas: Exclusive (OCEMS-Approved Competitive Process)

| OA# - NAME | | RFP | AWARD | CONTRACT ADMIN | PROVIDER | EXCLUSIVE | 2014 | 2019 |
|---|---|---|---|---|---|---|---|---|
| 20 | Santa Ana | City | City | City | Care | X | EOA 20 | TBD |
| 25 | Westminster | City | City | City | Shoreline | X | EOA 25 | TBD |

**PHASE 2**
**City Administered Areas: Non-Exclusive**
**January 2015**

| | OA# - NAME | RFP | AWARD | CONTRACT ADMIN | PROVIDER | EXCLUSIVE | 2014 | 2019 |
|---|---|---|---|---|---|---|---|---|
| 1 | Anaheim | | | City | Care | | OA 1 | TBD |
| 3 | Buena Park | | | City | Care | | OA 3 | TBD |
| 4 | Costa Mesa | | | City | Care | | OA 4 | TBD |
| 6 | Fountain Valley | | | City | Care | | OA 6 | TBD |
| 7 | Fullerton | | | City | Care | | OA 7 | TBD |
| 8 | Garden Grove | | | City | Care | | OA 8 | TBD |
| 9 | Huntington Beach | | | City | City | | OA 9 | TBD |
| 11 | Laguna Beach | | | City | Doctors | | OA 11 | TBD |
| 12 | La Habra | | | City | City | | OA 12 | TBD |
| 15 | Newport Beach | | | City | City | | OA 15 | TBD |
| 16 | Orange | | | City | City | | OA 16 | TBD |
| 18 | San Clemente | | | City | City | | OA 18 | TBD |

Stephen Wontrobski
27132 Sombras
Mission Viejo, CA 92692

February 11, 2016

Mr. Mark Refowitz
405 West 5th Street Seventh Floor
Santa Ana, CA 92801

Ref:  Costa Mesa 201 Rights

Dear Mr. Refowitz:

I just want to advise you that in the January 19, 2016 Costa Mesa City Council meeting, the subject of City of Costa Mesa 201 rights came up.  Costa Mesa and its City Attorney maintain that it has 201 rights.  This is in direct contradiction to your County EMS plan that was approved by the State EMSA Director, that states only Brea currently has 201 rights.  Hence, both your agency and the State EMSA Director maintain that Costa Mesa has <u>no</u> 201 rights.

With the submission of the County's EMS plan to the State Director for his approval, the County was required to verify that Costa Mesa still had 201 rights.  It determined that only Brea had 201 rights.  Costa Mesa did not.

I understand that Costa Mesa ceded its 201 rights, when it adopted the Orange County Model Ambulance Ordinance in the early 1980's by its own City Council passed resolution.  I believe your and the State Director's determination that Costa Mesa does not have 201 rights is correct.  Consequently, if this is correct, it would be illegal for Costa Mesa to issue any RFP for ambulance services.

Furthermore, it would appear that under the Butte County appellate case, the Orange County Health Care Agency would be required to issue and administer any ambulance RPP/Contract that Costa Mesa is intending to issue.  Your assistance in addressing this matter will clear up a glaring interpretation conflict regarding Costa Mesa's 201 rights and who is authorized to issue and administer an RFP for ambulance services for Costa Mesa.

<u>Questions</u>

Has Costa Mesa provided your agency or the State EMSA Director with evidence that it has contracted for or provided EMS ambulance services on a continuous basis since June 1, 1980?

Is Costa Mesa or the Health Care Agency correct in the determination of Costa Mesa 201 rights?

<u>Follow-up Request</u>

Long ago I requested that you provide the status of RFP's for ambulance services for non-OCFA Orange County cities.  I received no response from your agency to this letter.  Consequently, I issued a follow-up letter to you requesting the status of the RFP preparation and issuance.  Additional time has now passed without any response to that reminder letter to you.

An answer to my requested information will not only serve the interests of the public, but it will also provide needed information to County Counsel, the State EMSA Director, and the Board of Supervisors.  Can you please respond to my RFP status information request?

Sincerely,


Stephen M. Wontrobski                                   E: ochcaCM201rights02-11-16

Cc:  Tammi McConnell; EMSA Director; Costa Mesa City Council Members

Date: <u>2014</u>                                   **EMS PLAN**
                                   **AMBULANCE ZONE SUMMARY FORM**

In order to evaluate the nature of each area or subarea, the following information should be compiled for each zone individually.   <u>Please include a separate form for each exclusive and/or nonexclusive ambulance zone</u>.

---

**Local EMS Agency or County Name:** Orange County EMS

---

**Area or Subarea (Zone) Name or Title:** OA 4 – Costa Mesa

---

**Name of Current Provider(s):**
Include company name(s) and length of operation (uninterrupted) in specified area or subarea.

Care Ambulance Service (served the area since 2008)

---

**Area or Subarea (Zone) Geographic Description:** City of Costa Mesa

---

**Statement of Exclusivity (Exclusive or Non-Exclusive [HS 1797.6]):**
Include intent of local EMS agency and board action.

Non-Exclusive

---

**Type of Exclusivity ("Emergency Ambulance," "ALS," or "LALS" [HS 1797.85]):**
Include type of exclusivity (Emergency Ambulance, ALS, LALS, or combination) and operational definition of exclusivity (e.g., 911 calls only, all emergencies, all calls requiring emergency ambulance service, etc.).

---

**Method to achieve exclusivity, if applicable (HS 1797.224):**
If <u>grandfathered</u>, pertinent facts concerning changes in scope and manner of service.  Description of current provider including brief statement of uninterrupted service with no changes to scope and manner of service to zone.  Include chronology of all services entering or leaving zone, name or ownership changes, service level changes, zone area modifications, or other changes to arrangements for service.

If <u>competitively-determined</u>, method of competition, intervals, and selection process.  Attach copy/draft of last competitive process used to select provider or providers.

---

EXHIBIT D



**1059 East Bedmar Street
Carson, California  90746
Office:  (310) 835-9390
Fax:  (310) 835-3926
Internet:  americare.org**



March 19, 2015

*Sent via e-mail to:*  fred.wilson@surfcity-hb.org

Fred Wilson, City Manager
City of Huntington Beach
200 Main Street
Huntington Beach, CA 92648

Re: Request for Rotation in OCEMS Designated Non-OCEMS Administered OA Ambulance Zone OA 9 – Huntington Beach

Dear Mr. Wilson:

AmeriCare MedServices, Inc. ("AmeriCare") a privately family-owned and operated Orange County-based California Corporation which is qualified and licensed to provide emergency ambulance service throughout Orange County and that has been serving Orange County since its corporate organizational formation in 1996.

We are writing to you today at the direction of Dr. Samuel Stratton, Medical Director, Orange County EMS ("OCEMS") a division of the Orange County Health Care Agency.  As you may know, the Orange County Board of Supervisors has designated OCEMS to serve as its designated Local Emergency Medical Services Agency ("LEMSA") pursuant to California Health and Safety Code section 1797.200.   In its 2014 EMS Plan, which has been submitted to and approved by the California EMS Authority pursuant to California Health and Safety Code sections 1797.250 and 1797.105, OCEMS has determined that its designated Ambulance Response Zone OA 9 – Huntington Beach is a non-exclusive operating zone pursuant to California Health and Safety Code section 1797.224.

Pursuant to California Health and Safety Code section 1797.94, on February 25, 2015 we submitted a written request to OCEMS wherein we sought to be placed on rotation within OCEMS designated non-exclusive Ambulance Response Zone OA 9 – Huntington Beach.  On March 18, 2015 we received a written reply wherein Dr. Stratton directed us to contact the City Manager for the incorporated city within the zone.  Therefore, we are requesting that the City arrange for AmeriCare to be placed into rotation for all 9-1-1 prehospital emergency medical services requests for emergency ambulance service within Zone OA 9 – Huntington Beach in a manner that results in AmeriCare receiving an equal proportionate share of all such 9-1-1 prehospital emergency service requests within the zone.

We are making this request as we have reason to believe that as a non-exclusive Ambulance Response Zone, whichever entity (the County or the City) has the responsibility and authority related to the oversight, regulation and administration of prehospital emergency medical services and/or emergency ambulance operations within Ambulance Response Zone OA 9 – Huntington Beach, also bears the liability of anti-trust claims as restrictions of trade within this Zone would not be provided with state action immunity under federal antitrust laws for such actions taken which run afoul of such federal antitrust laws.

If on the other hand, the City maintains the position that it is does not has the responsibility and authority related to the oversight, regulation and administration of prehospital emergency medical services and/or emergency ambulance operations within Ambulance Response Zone OA 9 – Huntington Beach, upon such timely written confirmation of such a position in response to this written communication, AmeriCare will redirect its communications to the County in an effort to seek relief for our desire to enjoy the fruits of a free and competitive market for the industry in which we are engaged in.

We note that the City entered into an Ambulance Contract City Agreement with the County on 10/06/1986.  Based on this, we believe the matter of administration, and regulation of private ambulance services providing emergency ambulance

*Caring . . . Compassion . . . Courtesy – AmeriCare Ambulance Service – Dedicated to its employees*

service within the City has long been delegated by the City to the County pursuant to the above referenced agreement. Please let us know the City believes otherwise.

We thank you in advance for your careful consideration of the facts and requests made herein.

Sincerely,

Mike Summers
President/CEO
AmeriCare Ambulance Service

Cc:     Samuel Stratton, MD, Medical Director, OCEMS, via e-mail at: sstratton@ochca.com
        Tammi McConnell, EMS Administrator, OCEMS, via e-mail at: TMcConnell@ochca.com
        Mark Refowitz, Director, OCHCA, via e-mail at: mrefowitz@ochca.com
        Howard Backer, MD, via e-mail at: Howard.Backer@EMSAuthority.ca.gov

EXHIBIT E



# CITY OF HUNTINGTON BEACH

### OFFICE OF THE
# CITY ATTORNEY

P.O. Box 190
2000 Main Street
Huntington Beach, California 92648
Telephone: (714) 536-5555
Facsimile: (714) 374-1590

**Michael E. Gates**
City Attorney

**Mike Vigliotta**
Chief Assistant City Attorney

**Paul D'Alessandro**
Assistant City Attorney

**Scott Field**
Assistant City Attorney

**Neal Moore**
Sr. Deputy City Attorney

**John Fujii**
Sr. Deputy City Attorney

**Daniel K. Ohl**
Deputy City Attorney

April 20, 2015

Mr. Michael Summers
President/CEO
AmeriCare Ambulance Service
1059 East Bedmar Street
Carson, CA 90746-3601

Re:   City of Huntington Beach Ambulance Services

Dear Mr. Summers:

Please allow this letter to serve as a response to your letter dated March 19, 2015, requesting that AmeriCare MedServices, Inc. ("AmeriCare") be placed on rotation for an equal proportionate share of all 9-1-1 prehospital emergency medical services requests for emergency ambulance service within the City.

After a consideration of your points and a review of applicable legal authorities, the City of Huntington Beach ("City") respectfully denies your request. As more fully discussed below, the City has retained the authority to contract for emergency ambulance transportation services within its territorial limits, pursuant to Health and Safety Code section 1797.201 (Section 201); and, in accordance with its exercise of this authority, *the City of Huntington Beach currently has the exclusive right to provide emergency ambulance services within the City's jurisdiction.*

In 1980, the California Legislature enacted the Emergency Medical Services System and Prehospital Emergency Medical Care Personnel Act (EMS Act), which was codified as Health and Safety Code section 1797, *et seq.* This legislation was adopted for the purpose of governing most aspects of the statewide emergency medical services system at the State, County and local levels.

Under this statewide system, counties are permitted to develop an emergency medical services program, and each county developing such a program is required to designate a local emergency medical services agency (LEMSA) to administer the program. In 1982, the Orange County Board of Supervisors designated the County's Health Care Agency as the LEMSA.

42

Re:     City of Huntington Beach Ambulance Services
April 20, 2015
Page 2

A key feature of the EMS Act is to authorize the establishment of exclusive operating areas and the selection of service providers to be the exclusive operators within those areas. "Such authorization was necessary to immunize the agencies from liability under the United States Supreme Court's then recent decision holding that local governments granting monopolies would not be exempt from antitrust laws unless they acted pursuant to 'clearly articulated and affirmatively expressed' state policy." (*County of San Bernardino v. City of San Bernardino* (1997) 15 Cal.4th 909, 917-918.)  In turn, the creation of exclusive operating areas was seen as necessary "to offer private emergency service providers protection from competition in profitable, populous areas in exchange for the obligation to serve unprofitable, more sparsely populated areas." (*Valley Medical Transp. v. Apple Valley Fire Protection Dist.* (1998) 17 Cal.4th 747, 759.)

It appears that your assumption that there is a rotation of ambulance providers in the City of Huntington Beach is based on Orange County's 2014 Emergency Medical Services System Plan. Contrary to the County's prior plan, which designated certain functions to the Orange County Fire Authority, including the contract RFP process, the 2014 plan provides for the exclusive authority of the County to control the process for bidding and awarding contracts for ambulance services to all non-exempt cities within the County, including the creation of exclusive emergency operating areas.

The change in the County's plan, as mandated by the California Emergency Medical Services Authority, was based on the California Court of Appeal decision in *County of Butte v. California Emergency Medical Services Authority* (2010) 187 Cal.App.4th 1175.  In that case, the court clarified the statutory responsibilities of LEMSA with regard to the administration of requests for proposals and contracts for exclusive operating areas.  The Court of Appeal emphasized that the EMS Act requires each county "to designate one local emergency medical services agency, not two such agencies sharing the statutory powers and duties of Chapter 4 of the EMS Act …, including the establishment of [exclusive operating areas] and the designation of exclusive operators within those areas."  (187 Cal.App.4th at 1193.)  Although the California Emergency Medical Services Authority indicated that the County may contract with third parties to develop and administer RFPs, such third parties must be neutral and have no vested interest in the process, and the County must provide direct oversight, monitoring and, ultimately, the selection of a provider as part of the competitive process.

Therefore, in order for local agencies to maintain State-sanctioned immunity from antitrust laws while awarding exclusive contracts for the provision of emergency medical services, the California Emergency Medical Services Authority had determined that delegation by the County of Orange of the RFP process to the Orange County Fire Authority was not in compliance with the EMS Act, and that the County is responsible for conducting and administering the RFP process and for awarding contracts.

However, the City of Huntington Beach, like many other cities in Orange County, has been administering its own emergency pre-hospital emergency medical services for emergency ambulance service within the City, and has not delegated its authority to do so to the County LEMSA.  When enacted in 1980, the EMS Act recognized that many local agencies already had historical arrangements for the provision of their own emergency medical services, and the EMS

43

Re:     City of Huntington Beach Ambulance Services
April 20, 2015
Page 3

Act intended to protect the right of such cities and fire protection districts to continue the administration of their prehospital EMS.

In brief, the EMS Act declares that such arrangements shall remain in place absent a decision of the local agency to enter into a contract with the relevant LEMSA to transfer the responsibility for administration of their services.

Section 201 states in pertinent part:

> "Upon the request of a city … that contracted for or provided, as of June 1, 1980, prehospital emergency medical services, a county shall enter into a written agreement with the city … regarding the provision of prehospital emergency medical services for that city …. *Until such time that an agreement is reached, prehospital emergency medical services shall be continued at not less than the existing level, and the administration of prehospital EMS by cities … presently providing such services shall be retained by those cities* …." (Emph. added.)

The plain wording of Section 201 allows qualifying cities, like Huntington Beach, to continue to contract for or provide their own ambulance and other emergency medical services if they have not entered into an agreement with the LEMSA ceding control to the LEMSA for such matters. The California Supreme Court recognized that the decision of a city to enter into such an agreement is voluntary, and there is no statutory duty imposed on a city for requesting or reaching an agreement. (*County of San Bernardino*, *supra*, 15 Cal.4th at 922.)

Under Health and Safety Code section 1797.224 (Section 224), exclusive market rights may only be awarded for areas within a LEMSA's jurisdiction to a provider that has been selected through a competitive process or to a provider that has operated in the "same manner and scope" since January 1, 1981. If neither of these conditions is met, any qualified provider must be permitted to operate emergency ambulance services within the LEMSA's jurisdiction. However, these rules do not apply to certain cities and fire protection districts, including the City of Huntington Beach, that have retained the administration of their own EMS systems since June 1, 1980.

Notably, the last sentence of Section 224 reads: "Nothing in this section supersedes Section 1797.201." Thus, while Section 224 speaks to the ability of a LEMSA to create exclusive operating areas, "the ability to create [exclusive operating areas] in Section 1797.224 is made expressly subject to [Section 201], and therefore *would not permit a county or EMS agency to unilaterally displace a city ... continuing to operate emergency medical services*." (*Valley Medical Transp.*, *supra*, 17 Cal.4th at 759 (emph. added); *County of San Bernardino*, *supra*, 15 Cal.4th at 932 ["a local EMS agency's ability to create [exclusive operating areas] may not supplant the cities' ... ability to control EMS operations over which they historically exercised control"]; see also *City of Petaluma v. County of Sonoma* (1999) 15 Cal.App.4th 1239.)

In the County LEMSA's 2014 Plan, the City and several other Section 201 cities were not listed as exclusive operating areas under Section 224. Nonetheless, because the City's authority to provide EMS services is derived directly from statute (i.e., Section 201) and not be the LEMSA, the County has no authority to alter or modify how emergency ambulance servies are provided

Re:     City of Huntington Beach Ambulance Services
April 20, 2015
Page 4

within the City's jurisdiction.  A county cannot "contravene the authority of eligible [*i.e.*, grandfathered] cities … to continue the administration of their prehospital EMS without the latter's consent." (*County of San Bernardino*, *supra*, 15 Cal.4th at 924.)  Instead, the county must accommodate the city's authority as the county creates an integrated EMS system.

In sum, cities that retain their right to administer their own EMS systems under Section 201 are not subject to the requirements of Section 224.  In contrast to providers that are granted exclusive market rights by a LEMSA under Section 224, there is no requirement that a provider granted exclusive market rights by a Section 201 city be selected through a competitive process or meet any "manner and scope" requirements.  Rather, Section 201 cities are free to contract with any qualified company they choose.

Therefore, those cities in Orange County having grandfathered ambulance services contracts from and after 1980, such as the City of Huntington Beach, have the unfettered ability to continue those arrangements and are not subject to or bound by the County's RFP process.  This conclusion finds support in a recent opinion of the California Attorney General.  In Opinion No. 11-707 (December 16, 2014), the Attorney General declares:  "Cities … that have been providing prehospital emergency medical services since June 1, 1980 … are not required by state regulation to have a written agreement with a [LEMSA] in order to 'participate in the EMS system' as specified in [Section 201]."  The Attorney General observed that until and unless a Section 201 city requests such a written agreement, the city "retains the right to administer prehospital EMS within its borders." (Quoting *County of San Bernardino*, *supra*, 15 Cal.4th at 925.)

A Section 201 city that provides services either directly or through a private contractor is not required to open up its jurisdiction, on a rotation or any other basis, to additional providers.  In addition to the authority conferred by Section 201, a city's authority to exclusively contract for emergency ambulance services is established by Government Code section 38794, which states as follows:  "The legislative body of a city may contract for ambulance service to serve the residents of the city as convenience requires."

The City of Huntington Beach disagrees with your assertion that the City is exposing itself to antitrust liability by not acquiescing to your demand and instead maintaining its current contract for exclusive emergency ambulance services.  As the U.S. Court of Appeals for the Ninth Circuit has stated, Government Code section 38794 "affirmatively authorizes cities to provide ambulance services to their residents and further authorizes the elimination of competition" within the city's jurisdiction in so doing. (*Spring Ambulance Service v. City of Rancho Mirage* (9th Cir. 1984) 745 F.2d 1270, 1273; see also *Gold Cross Ambulance v. City of Kansas City* (8th Cir. 1983) 705 F.2d 1005.)

Therefore, the City of Huntington Beach and other Section 201 cities enjoy state action immunity from antitrust challenge when it awards an exclusive emergency ambulance service contract.  (See Health & Saf. Code § 1797.6.)  Additionally, you should be aware that California's antitrust laws do not apply to municipalities.  (E.g., *Penn v. City of San Diego* (1987) 188 Cal.App.3d 636; *People v. City and County of San Francisco* (1979) 92 Cal.App.3d 913; *Widdows v. Kock* (1968) 253 Cal.App.2d 228.)

45

Re:    City of Huntington Beach Ambulance Services
April 20, 2015
Page 5

Notwithstanding its ability to continue the administration of grandfathered emergency ambulance services, the City of Huntington Beach acknowledges that it is subject to the provisions of the EMS Act relating to so-called "medical control," which is exercised by LEMSAs (here, the County of Orange) under the direction of a medical director with regard to such matters as dispatch and patient destination policies, patient care guidelines, and quality assurance requirements. (*Valley Medical Transp.*, *supra*, 17 Cal.4th at 755; *County of San Bernardino*, *supra*, 15 Cal.4th at 926-927; Health & Saf. Code § 1797.220.)

Your letter suggests certain agreements between the County of Orange and Section 201 cities implementing the County's medical control over emergency medical services in some way authorize the County to administer the RFP process and award contracts for those cities' emergency ambulance services.  Based upon the foregoing authorities, as you can see, such a belief would be erroneous.

Agreements between the County and Section 201 cities concerning the provision of medical control do not operate to waive or extinguish those cities' retention of their rights to continue to administer contracts for emergency ambulance services.  The County's medical control policies and procedures cannot interfere with the City's internal administrative matters.  In short, statutory language, case law and the California Attorney General clearly reject your position.

Please feel free to contact the City Attorney if you have any questions concerning the matters discussed above.

Very truly yours,

MICHAEL E. GATES
City Attorney
City of Huntington Beach

cc:    Samuel J. Stratton, MD, MPH, Orange County Health Care Agency
        Tammi McConnell RN, MSN, EMS Administrator, Orange County Health Care Agency
        City Council
        Patrick McIntosh, Chief of the Huntington Beach Fire Department

MG/slf

46